UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRACIELA GUDINO,<br><br>        Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>        Defendant. | Case No. EDCV 10-1765 JC<br><br>MEMORANDUM OPINION AND<br>ORDER OF REMAND |

## I. SUMMARY

On November 24, 2010, plaintiff Graciela Gudino ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's applications for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; December 9, 2010 Case Management Order ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On July 10, 2007, plaintiff filed applications for Supplemental Security Income benefits and Disability Insurance Benefits. (Administrative Record ("AR") 118, 123). Plaintiff asserted that she became disabled on November 27, 2006, due to invasive breast cancer, carpal tunnel, tendonitis, chronic pain, depression, and severe arthritis. (AR 137). The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff (who was represented by counsel and assisted by a Spanish language interpreter) and a vocational expert on July 6, 2009. (AR 23-59).

On October 7, 2009, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 12). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: history of breast cancer (treated without recurrence) and joint pain (AR 14); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 15); (3) plaintiff retained the residual functional capacity to perform the full range of light work (20 C.F.R. §§ 404.1567(b), 416.967(b)) (AR 15); (4) plaintiff could not perform her past relevant work (AR 21); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform (AR 21-22); and (6) plaintiff's allegations regarding her limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 18).

The Appeals Council denied plaintiff's application for review. (AR 1).

///
///

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work

|   |   |
|---|---|
| 1 | experience, allow the claimant to adjust to other work that |
| 2 | exists in significant numbers in the national economy?  If so, |
| 3 | the claimant is not disabled.  If not, the claimant is disabled. |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

### B.     Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

///
///

## IV. DISCUSSION

Plaintiff contends that a reversal or remand is warranted because the ALJ failed to find fibromyalgia to be a severe impairment at step two. (Plaintiff's Motion at 8-10). As the Court finds that the ALJ erred at step two, and as it cannot find that the ALJ's error was harmless, a remand is warranted.

### A. Pertinent Law

At step two of the sequential evaluation process, plaintiff has the burden of presenting evidence of medical signs, symptoms and laboratory findings[1] that establish a medically determinable physical or mental impairment that is severe, and that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-1005 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); see 20 C.F.R. §§ 404.1520, 416.920. Substantial evidence supports an ALJ's determination that a claimant is not disabled at step two where "there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment." Id. (quoting SSR 96-4p, 1996 WL 374187, at *1-*2).

Step two is "a de minimis screening device [used] to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Applying the normal standard of review to the requirements of step two, a court must determine

---

[1] A medical "sign" is "an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical and laboratory diagnostic techniques[.]" Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-4p at *1 n.2). A "symptom" is "an individual's own perception or description of the impact of his or her physical or mental impairment(s)[.]" Id. (quoting SSR 96-4p at *1 n.2); see also 20 C.F.R. §§ 404.1528(a)-(b), 416.928(a)-(b). "[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone." Ukolov, 420 F.3d at 1005 (citation omitted); SSR 96-4p at *1-2 ("[R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings.").

whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments.  <u>Webb v. Barnhart</u>, 433 F.3d 683, 687 (9th Cir. 2005) (citation omitted); <u>see</u> <u>also</u> <u>Yuckert v. Bowen</u>, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.").  An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work."  <u>Webb</u>, 433 F.3d at 686 (citation omitted).

### B. Pertinent Facts

Dr. Wayne Shew Yee, a rheumatologist, treated plaintiff from January 22, 2008 until at least June 17, 2009.  (AR 520-23, 544-45, 599-604, 619-20, 627-28, 641, 649-50, 669-70, 685-86, 695-96, 709-07, 714-15).  On January 22, 2008, Dr. Yee conducted an initial rheumatology consultation with plaintiff, which included a physical examination.  (AR 520-23).  Progress notes from the initial consultation reflect that:  (i) plaintiff complained of moderate pain in her hands; (ii) plaintiff had minimal synovitis and tenderness on the 2nd, 3rd and 4th MCP joints on both hands, and crepitation on both knee joints; and (iii) plaintiff had several "fibromyalgia tender points" on her body.  (AR 520-22).  Dr. Yee diagnosed plaintiff with fibromyalgia and arthralgia.  (AR 520-23).

In progress notes dated February 20, 2008, May 28, 2008 and February 19, 2009, Dr. Yee diagnosed plaintiff with arthritis and fibromyalgia and noted several "fibromyalgia tender points" on plaintiff's body.  (AR 544, 627-28, 685-86).

In progress notes dated July 22, 2008, Dr. Yee diagnosed plaintiff with "inadequately controlled" fibromyalgia and noted that plaintiff exhibited, *inter alia*, musculoskeletal tenderness.  (AR 641).

///

In progress notes dated April 10, May 28, July 22, August 25, and November 3, 2008, and February 19, March 18, April 20, and May 20, 2009, Dr. Yee diagnosed plaintiff with rheumatoid arthritis and fibromyalgia, and stated that plaintiff complained of moderate and constant pain, had reduced range of motion in both wrists, had tenderness and swelling in both hands, and had musculoskeletal "tenderness." (AR 619-20, 641, 649-50, 669-70, 685-86, 695-96, 706-07, 714-15). Although plaintiff complained during her initial visits with Dr. Yee of pain only in her hands and wrists, beginning in November 3, 2008, plaintiff complained that she had pain "all over." (AR 669, 685, 695, 706, 714).

On June 17, 2009, Dr. Yee completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical) for plaintiff ("Medical Source Statement") and opined that plaintiff: (i) could lift up to 20 pounds frequently and carry up to 20 pounds occasionally; (ii) could sit/stand/walk only one hour at a time without interruption; (iii) could sit for four hours and stand/walk for one hour in an eight-hour work day; (iv) could occasionally reach, handle, finger, feel, and push/pull with both hands; (v) could occasionally operate foot controls with both feet; (vi) could occasionally climb stairs and ramps and balance, but could never climb ladders or scaffolds, stoop, kneel, crouch, or crawl; and (vii) could never work at unprotected heights, could occasionally tolerate exposure to moving mechanical parts, operating a motor vehicle, humidity and wetness, extreme cold and vibrations, and could frequently tolerate exposure to dust, odors, fumes, pulmonary irritants and extreme heat. (AR 599-603).

In his decision, the ALJ gave "no weight to Dr. Yee's opinions" in the Medical Source Statement, stating that such opinions "were not supported by any objective medical evidence." (AR 19-20). The ALJ did not address the fibromyalgia diagnosis in the decision at all, much less find fibromyalgia to be one of plaintiff's severe impairments.

///

**C.     Analysis**

Plaintiff contends that the ALJ erred in evaluating the severity of her impairments at step two.  (Plaintiff's Motion at 8-10).  The Court agrees.

Here, plaintiff has presented evidence which suggests that her fibromyalgia is a severe physical impairment.  As noted above, Dr. Yee's progress notes for plaintiff reflect that (1) during his physical examination, Dr. Yee identified several "fibromyalgia tender points" on plaintiff's body (AR 521-22, 544, 627-28, 685-86); (2) during several visits with Dr. Yee, plaintiff complained of "pain all over" (AR 669, 685, 695, 706, 714); and (3) Dr. Yee consistently diagnosed plaintiff with fibromyalgia.  (AR 522, 544, 619, 628, 641, 650, 670, 686, 695, 706, 714).  Such findings constitute objective medical evidence which supported Dr. Yee's fibromyalgia diagnosis.[2]  In light of Dr. Yee's fibromyalgia diagnosis and other findings during the rheumatologist's examinations of plaintiff (*e.g.*, reduced range of motion in wrists, tenderness and swelling in hands, whole body pain), the Court cannot conclude that plaintiff's fibromyalgia had no more than a minimal effect on plaintiff's ability to work.  Therefore, the ALJ's failure to even mention

---

[2]While there are no laboratory tests for the presence or severity of fibromyalgia, courts have held that a physical examination which, *inter alia*, assesses the location and severity of patient's pain and tests whether a patient has tenderness at a certain number of fixed locations on her body is a medically acceptable technique for diagnosing the condition.  See, e.g., Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001) (recognizing that "[t]he principal symptoms [of fibromyalgia] are 'pain all over,' fatigue, disturbed sleep, stiffness, and 'the only symptom that discriminates between it and other diseases of a rheumatic character' multiple tender spots, more precisely 18 fixed locations on the body . . . that when pressed firmly cause the patient to flinch") (citation and internal quotation marks omitted); Perl v. Barnhart, 2005 WL 579879, *3 (E.D. Pa. Mar. 10, 2005) ("[R]eports from treating physicians that document symptoms [are important] in determining residual functional capacity of claimant suffering from fibromyalgia because such observations may be the only type of 'medically acceptable clinical technique' available.") (citation omitted); see also SSR 99–2p, n.3 (Social Security Administration follows criteria established by the American College of Rheumatology to determine whether a claimant has the medically determinable impairment of fibromyalgia.).  Defendant concedes that the "identification of . . . fixed points of tenderness" on a patient's body is a medically acceptable technique for diagnosing fibromyalgia.  (Defendant's Motion at 13).

fibromyalgia at step two of the sequential evaluation process was error.  Cf. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (legal error for ALJ to ignore medical evidence without explanation) (citation omitted).

  The Court cannot say that the ALJ's error was harmless.  The ALJ made no mention of plaintiff's fibromyalgia in his analysis at step two.  (AR 14-15).  Moreover, since the ALJ rejected Dr. Yee's opinions expressed in the Medical Source Statement (and implicitly the findings in Dr. Yee's progress notes for plaintiff), it appears that the ALJ never evaluated plaintiff's fibromyalgia in the succeeding steps of the sequential evaluation process.  Therefore, the Court cannot conclude that the ALJ's error was inconsequential to the ALJ's disability decision.  Cf. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (failure to address particular impairment at step two is harmless if ALJ fully evaluates claimant's medical condition in later steps of sequential evaluation process); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1055 (9th Cir. 2006) (ALJ's error harmless where it is "inconsequential to the ultimate nondisability determination").

  To the extent defendant contends that the ALJ's error was harmless because "Dr. Yee [gave] no opinion as to any functional limitations due to fibromyalgia" (Defendant's Motion at 11), such an argument lacks merit.  Contrary to defendant's suggestion, in the Medical Source Statement, Dr. Yee opined that plaintiff had several functional limitations.  (AR 599-603).  Although, as defendant correctly notes, the ALJ gave no weight to such opinions, the ALJ's reason for doing so (*i.e.* because Dr. Yee's opinions "were not supported by any objective medical evidence") is belied by the record.  As noted above, progress notes reflect that Dr. Yee diagnosed plaintiff with fibromyalgia and appears to have done so by using medically acceptable techniques for diagnosing that condition.  To the extent the ALJ found the evidence inadequate to allow for proper determination of the severity of plaintiff's fibromyalgia, the ALJ should

have developed the record further. See 20 C.F.R. §§ 404.1512(e), 416.912(e) (the Administration "will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all of the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").

Accordingly, this case must be remanded to permit the ALJ properly to consider the medical evidence and the severity of plaintiff's fibromyalgia.

## V.   CONCLUSION[3]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[4]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  February 6, 2012

                                             /s/
                              Honorable Jacqueline Chooljian
                              UNITED STATES MAGISTRATE JUDGE

---

[3] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted).  Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

[4] The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.  Nonetheless, on remand the ALJ may wish to revisit his evaluation of Dr. Yee's opinions.